UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00599-GNS-RSE

FRED L. McDOWELL                                                                                          PLAINTIFF

v.

RAYTHEON COMPANY                                                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 49). The motion is ripe for adjudication.

## I.     STATEMENT OF FACTS AND CLAIMS

Plaintiff Fred McDowell ("McDowell") brings this civil rights action against his former employer Raytheon Company ("Raytheon"). McDowell's employment began as an Ordnance Equipment Mechanic ("OEM") at Raytheon's Louisville facility in January 2004. (McDowell Dep. vol. I, 13:14-16, 16:10-19, Jan. 15, 2025, DN 49-4). McDowell worked in Raytheon's teardown area, where workers deconstruct munitions so that their components can be repurposed to build new munitions. (Def.'s Mot. Summ. J. Ex. 11, at 2, DN 49-14). McDowell excelled at this work, earning numerous awards and receiving praise from his supervisors. (McDowell Dep. vol. I, 115:6-15, DN 49-4; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 2-5, DN 50-2).

In early 2023, McDowell was working on Raytheon's ELX line, which involves deconstructing computerized components of munitions. (McDowell Dep. vol. I, 19:17-23, 39:1-4, 39:20-25, 41:9-18, DN 49-4; Ware Dep. 14:21-23, May 14, 2025, DN 50-4). Because of the technical nature of the work in ELX, assignment there was viewed as a mark of prestige within the teardown area. (McDowell Dep. vol. II, 119:19-120:2, May 12, 2025, DN 50-1). McDowell was

1

proud that he worked in ELX and took ownership in his role as the go-to OEM on the line. (McDowell Dep. vol. I, 68:3-69:4, 93:2-10, 103:23-25, DN 49-4).  McDowell claimed this all changed on February 16, 2023, when he was called into a meeting with his supervisor, Brian Frey ("Frey"), Frey's supervisor, Joe Justice ("Justice"), and other Raytheon employees. (McDowell Dep. vol. I, 27:12-16, DN 49-4).  At some point during the conversation, Justice said, "We're going to place some young mechanics in the position[,]" referring to the ELX line. (McDowell Dep. vol. I, 62:9-10, Jan 15, 2025, DN 50-5).  McDowell immediately felt this comment was evidence of age discrimination and responded "[s]ir, you can't say that to me." (McDowell Dep. vol. I, 62:10-11, DN 50-5).  Justice reiterated his remark, saying: "Let me put it this way.  I'm going to put some fresh, new, young mechanics in the area." (McDowell Dep. vol. I, 62:12-13, DN 50-5).  McDowell responded in disbelief and asked Frey if he could immediately go to Raytheon's human resources department.  (McDowell Dep. vol. I, 62:15-19, DN 50-5).

Frey accompanied McDowell to the human resources department where both men met with human resources employee Katie Ford ("Ford"). (McDowell Dep. vol. I, 62:19-22, DN 50-5).  In the meeting, McDowell reported Justice's comments and Frey confirmed McDowell's report. (McDowell Dep. vol. I, 62:20-63:4, DN 49-4).  Ford told McDowell that Justice's comments would be addressed, and McDowell returned to his workstation. (McDowell Dep. vol. I, 63:2-4. DN 49-4).  Ford met with Justice following her meeting with McDowell and Frey.  (Ford Dep. 48:3-5, May 13, 2025, DN 49-6).  Justice admitted to making the comment and Ford recommended that he apologize to McDowell.  (Ford Dep. 48:3-14).

Later that day, Justice approached McDowell on the plant floor. (McDowell Dep. vol I, 63:5-8, DN 49-4).  He asked McDowell to "come and talk to [him] like a man." (McDowell Dep. vol I, 63:8-9, DN 49-4).  McDowell responded that he did not wish to speak with Justice and

requested that he leave him alone. (McDowell Dep. vol I, 63:10-11, DN 49-4). This conversation took place within earshot of McDowell's colleague Steven Ware ("Ware"). (McDowell Dep. vol I, 63:13-14, DN 49-4; Ware Dep. 16:6-24, 17:3-10). According to Ware, Justice approached McDowell in an "[a]ggressive" manner. (Ware Dep. 16:7-9). Ware told Justice not to speak to McDowell, but Justice repeatedly said that McDowell needed to "come back and talk to [him] like a man." (McDowell Dep. vol I, 63:12-14 DN 49-4; Ware Dep. 16:6-24, 17:3-10). McDowell walked away from Justice and again went to see Ford in the human resources office. (McDowell Dep. vol. I, 63:11-16, DN 49-4). In his second meeting with Ford, she told McDowell that she had encouraged Justice to approach him to apologize. (McDowell Dep. vol. I, 63:15-19, DN 49-4).

McDowell characterizes the year that followed as one of increasing humiliation and harassment. (McDowell Dep. vol. I, 66:15-25, DN 49-4). A few weeks after Justice's initial comments about young mechanics, McDowell was moved from the ELX line and began working on the Gun and Ammo line. (McDowell Dep. vol. I, 110:22-111:8, DN 50-5). However, McDowell still had to come in an hour early to train the younger workers who replaced him. (McDowell Dep. vol. I, 81:12-15, 82:12-14, 125:3-18, DN 49-4; Frey Dep. 57:22-58:7, May 13, 2025, DN 50-3). He began "burning" through his paid time off because of the harassment he was facing at Raytheon, which he described as "constant." (McDowell Dep. vol. II, 54:20, 73:8-20, DN 50-1; Pl's Resp. Def.'s Mot. Summ. J. Ex. B, at 6). McDowell reported continued harassment by Justice to Ford, and when McDowell felt Ford stopped caring, he reported the harassment to his union. (McDowell Dep. vol. II, 36:3-17, 42:8-11, 43:16-25, 54:4-10, DN 49-5).

In March 2023, McDowell's union filed a grievance on his behalf. (Def.'s Mot. Summ. J. Ex. 14, at 2, DN 49-17). The grievance stated that McDowell felt he was being harassed by Justice

3

and being treated unfairly. (McDowell Dep. vol. II, 57:6-10, DN 49-5). In August, Raytheon sought to resolve this grievance by offering McDowell the opportunity to return to the ELX line. (Def.'s Mot. Summ. J. Ex. 14, at 2). McDowell refused this opportunity because he felt that it would lead to issues with his fellow union members and because he had "had enough" of Raytheon and felt that his supervisors had rejected his ELX expertise. (McDowell Dep. vol. I, 114:18-25, DN 49-4).

In April 2023, McDowell filed and later amended a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mot. Summ. J. Ex. 7, at 2, DN 49-10; Def.'s Mot. Summ. J. Ex. 8, at 2, DN 49-11). The original charge alleges instances of race and age discrimination. (Def.'s Mot. Summ. J. Ex. 7, at 2). Shortly after filing his original charge, McDowell received a performance review that he characterizes as negative, though Raytheon disputes this characterization. (McDowell Dep. vol. I, 133:13-25, DN 50-5; McDowell Dep. vol. I, 134:5-20, 135:19-25, 136:10-19, 137:18-138:13, DN 49-4; Def.'s Mot. Summ. J. Ex. 15, at 2-3, DN 49-18; Def.'s Mem. Supp. Def.'s Mot. Summ. J. 9, 23-25, DN 49-1). McDowell then amended his EEOC charge to include an allegation of retaliation based on the review he received. (Def.'s Mot. Summ. J. Ex. 8, at 2). McDowell did not provide Raytheon with a copy of the original charge after it was filed, but he assumed that the negative performance review was in part meant to be retaliatory. (McDowell Dep. vol. I, 140:22-25, DN 49-4; McDowell Dep. vol. I, 133:3-12, DN 50-5).

In July 2023, McDowell injured his shoulder in a workplace accident where he was pinned against a wall by a piece of equipment. (McDowell Dep. vol. I, 10:15-11:9, DN 49-4). Months later, in February 2024, McDowell was seriously injured in a head-on car accident while he was on his way to work. (McDowell Dep. vol. I, 10:22-11:2, DN 49-4). This accident left McDowell

with serious physical limitations which have prevented his return to work. (McDowell Dep. vol. I, 11:10-25, DN 49-4; McDowell Dep. vol. II, 87:15-20, DN 49-5). Pursuant to the collective bargaining agreement between Raytheon and the union, McDowell's employment was terminated on August 20, 2024, because he had been on injured leave for more than six months with no prognosis for return to work. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 10).

McDowell brought this action against Raytheon in Jefferson Circuit Court (Kentucky), claiming age discrimination and retaliation under the Kentucky Civil Rights Act ("KCRA"). (Compl. ¶¶ 1-4, 18-33, DN 1-1). Raytheon then removed the action to this Court. (Notice Removal, DN 1). Following discovery, Raytheon moved for summary judgment on all claims. (Def.'s Mot. Summ. J., DN 49). McDowell opposes the motion. (Pl.'s Resp. Def.'s Mot. Summ. J., DN 50).

## II. JURISDICTION

The Court has jurisdiction over this matter based on the diversity of the parties and the amount in controversy exceeds the jurisdictional limitation of this Court. *See* 28 U.S.C. § 1332.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may

meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case[,]" or affirmatively negates an essential element of the nonmoving party's claims, the nonmoving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

### IV.  DISCUSSION

#### A.  Age Discrimination

The KCRA bars an employer from discriminating against an individual "because of the individual's . . . age" if the individual is 40 years of age or older. KRS 344.040(1)(a). Kentucky courts interpret the KCRA in consonance with Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005); *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 305 (Ky. 2016); *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575-76 (6th Cir. 2012); *Allen v. Highlands Hosp. Corp.* 545 F.3d 387, 393 (6th Cir. 2008).

A plaintiff may establish violations of the KCRA through direct or circumstantial evidence. *Back*, 694 F.3d at 579. "'Direct evidence is evidence that proves the existence of a fact without

6

requiring any inferences' to be drawn." *Pelcha v. MW Bancorp., Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). "In other words, direct evidence is 'smoking gun' evidence that 'explains itself.'" *Id.* (quoting *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016)). Circumstantial evidence, however, requires a jury or factfinder to draw inferences from the evidence presented and conclude that a plaintiff faced adverse action because of their age. *Id.* (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

"Regardless of the method, though, the ultimate inquiry remains the same: 'the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.'" *Pelcha*, 988 F.3d at 325 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990)).

    **1.**  ***Direct Evidence***

McDowell offers Justice's statements in the February meeting as direct evidence of age discrimination. (Pl.'s Resp. Def.'s Mot. Summ. J. 11-12). It is undisputed that Justice said that Raytheon was going to place some "young mechanics" in the ELX department. (Def.'s Mem. Supp. Mot. Summ. J. 5; Pl.'s Resp. Def.'s Mot. Summ. J. 11; McDowell Dep. vol. I, 62:9-13, 76:22-77:4, DN 49-4).

Direct evidence is evidence that, if believed, requires the conclusion that age was the "but for" cause of the adverse employment action. *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014). Direct evidence does not require the factfinder to draw any inferences to conclude that unlawful discrimination caused the employer's actions. *Zivkovic v. Juniper Networks, Inc.*, 450 F. Supp. 2d 815, 823 (N.D. Ohio 2006) (citing *Harris v. Giant Eagle Inc.*, 133 F. App'x 288, 293 (6th Cir. 2005)). "[O]nly the most blatant remarks, whose intent could be nothing other than

to discriminate on the basis of age, satisfy this criteria." *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). The Sixth Circuit uses four factors to evaluate allegedly discriminatory statements offered as direct evidence:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the [adverse action] . . . .

*Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002)). "None of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account." *Peters*, 285 F.3d at 478 (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)).

First, Raytheon argues that because Justice was not the decision maker with respect to McDowell's reassignment, his statements cannot be the basis for an age discrimination claim. (Def.'s Mem. Supp. Mot. Summ. J. 14-15). Frey, the Value Stream Leader, was McDowell's direct supervisor and in turn reported to Justice, the Value Stream Manager. (Frey Dep. 17:24-19:5, 20:6-11, May 13, 2025, DN 49-7). Raytheon asserts that it was Frey who made the decision to move McDowell from ELX to Gun and Ammo. (Def.'s Mem. Supp. Mot. Summ. J. 5, 14). Frey also testified that he made the decision. (Frey Dep. 42:3-11, DN 49-7). Frey goes on to suggest, however, that he had to "run" proposed worker movements by Justice. (Frey Dep. 47:21-48:6, DN 50-3). Frey also stated that a group of his superiors—including Jason Lenhart and possibly Justice—gave him the order to move McDowell and the other OEMs out of ELX. (Frey Dep. 63:11-64:22, DN 49-7). Additionally, during Raytheon's internal investigation into the

events underlying McDowell's claims, Justice indicated that he was the person who decided to move McDowell. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. K, at 3, DN 50-1). Viewing Frey's testimony in a light most favorable to McDowell, a reasonable jury could conclude that Justice was, in fact, the decisionmaker. Accordingly, this factor weighs in favor of the statements being direct evidence of discrimination.

Second, Justice's statements relate to the decision-making process. They were made in a meeting about the staff reassignments on the ELX line, relate directly to the personnel moves being made, and speak to the outcome of those moves.

Raytheon contends that there is no evidence that these were merely isolated remarks. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 15). McDowell points to no evidence showing a history or pattern of Justice or any other managers at Raytheon making discriminatory remarks about age. Mere remarks about age, without a direct tie to the employee or an explicitly negative comparison are not direct evidence of discrimination. *See Alberty v. Columbus Twp.*, 730 F. App'x 352, 357 (6th Cir. 2018) (reference to plaintiff's replacement as a "young lady" not direct evidence of age discrimination); *Sanders v. Lincoln Cnty.*, 231 F. Supp. 3d 290, 296 (E.D. Tenn. 2017) (statement that plaintiff was an "older man" not direct evidence of age discrimination); *Williams v. Ctr. for Health Affs.*, No. 1:06-CV-0371, 2007 WL 3146093, at *7 (N.D. Ohio Oct. 24, 2007) (statement that organization was moving in a "positive direction" and "getting a lot of . . . young people in here now" not direct evidence of age discrimination); *Cronk v. Nationwide Mut. Ins. Co.*, 376 F. Supp. 2d 800, 805 (E.D. Tenn. 2005) (statement that "management preferred young guys because they are go-getters" not direct evidence of age discrimination). This type of comment is the "quintessential ambiguous remark warned against by the Sixth Circuit," as it requires inference and context to be construed as discriminatory. *Sanders*, 231 F. Supp. 3d at 296.

9

In this instance, Justice's age-related comments would require a jury to make inferences to find that they were discriminatory. Justice did not say that he wanted younger workers on the ELX line, nor did he say that McDowell was too old to work on the line. He told McDowell that the workers moving to the ELX line were "young." (McDowell Dep. vol. I, 62:9-10, DN 50-5). Justice's comments can serve as circumstantial evidence of age discrimination, but are not so pointedly prejudiced that they constitute direct evidence. Having failed to establish direct evidence, McDowell must establish his case through circumstantial evidence.[1]

### 2.   *Circumstantial Evidence*

Courts in the Sixth Circuit use the *McDonnell Douglas* burden shifting framework to evaluate circumstantial evidence of age discrimination. *Back*, 694 F.3d at 576; *Highfield v. City of Vanceburg*, 6432 F. Supp. 3d 706, 717 (E.D. Ky. 2022). Under *McDonnell Douglas*, a plaintiff first must make a prima facie case of age discrimination by showing that: (1) he is over 40; (2) he faced an adverse employment action; (3) he was qualified for the position he held; and (4) he was replaced by a younger worker or treated differently from similarly situated younger workers. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *George v. Youngstown State Univ.*, 966 F.3d 446, 464 (6th Cir. 2020); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Once a plaintiff satisfies this initial burden, the burden shifts to a defendant-employer to show a non-discriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). If the defendant meets this burden, the burden shifts back to the plaintiff to show that the defendant's proffered non-discriminatory justification

---

[1] McDowell also argues that Justice's comments can be direct evidence of age discrimination even if he was not the decision maker, under the "cat's paw" theory of liability. (Pl.'s Resp. Def.'s Mot. Summ. J. 12-13). Because McDowell has not shown that Justice's comment was more than an isolated remark, he has failed to offer sufficient direct evidence. Accordingly, it is not relevant whether Justice was the decisionmaker.

is pretextual. *Id.* At the summary judgment stage, the court must determine if each party has submitted sufficient evidence to create a genuine dispute of material fact at each stage of the *McDonnell Douglas* framework. *Back*, 694 F.3d at 576.

### a. Prima Facie Case

At the outset, only the second and fourth elements of the prima facie case require analysis. It is not in dispute that McDowell was over 40 years old when he was reassigned. (Answer ¶ 9, DN 8). Although it is unclear if Raytheon is arguing that McDowell was not qualified for his role in the ELX department, the argument is not well taken to the extent it is raised. McDowell worked in his role in the ELX department before his reassignment and won performance awards for his work. (McDowell Dep. vol. I, 115:6-15, DN 50-5; Pl.'s Resp. Def.'s Mot. Summ. J. Ex. B, at 2-5). McDowell was therefore clearly qualified for the role. Accordingly, the remaining questions under the first prong of the *McDonnell Douglas* framework are whether McDowell suffered an adverse employment action and whether McDowell was replaced by a younger worker or treated differently from similarly situated younger workers.

First, Raytheon argues that McDowell did not suffer any adverse action and therefore his claim cannot succeed. (Def.'s Mem. Supp. Mot. Summ. J. 16-17). McDowell asserts that he did suffer adverse actions because he had to train his replacements and perform roles like those of a supervisor without additional pay or a change in title. (Pl.'s Resp. Def.'s Mot. Summ. J. 15).

"An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Mitchell*, 389 F.3d at 182 (alteration in original) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). A materially adverse change is more than a mere inconvenience or change in responsibilities. *Id.* Instead, "[a]n adverse employment action requires a loss of pay or benefits, a detrimental change

11

in responsibilities, a negative change in the terms or conditions of employment, or some other actual or unfavorable change in job status." *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 921 (W.D. Tenn. 2011) (citing *Kocsis*, 97 F.3d at 883). De minimis employment actions such as a "bruised ego" are not materially adverse. *Id.* (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)).

McDowell's reassignment and other changes to his working conditions could constitute an adverse employment action. Reassignments and position transfers can constitute adverse actions, especially when accompanied by wage and hour changes. *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). Even if the reassigned worker's wages and hours do not change, he can nonetheless suffer an adverse employment action "where there is evidence that the employee received 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Id.* (quoting *Kocsis*, 97 F.3d at 886).

Following Justice's comments, Raytheon transferred McDowell from ELX to Gun and Ammo teardown. (McDowell Dep. vol. I, 110:22-111:8, DN 50-5). Some evidence indicates that this was not a materially adverse change in his employment. McDowell's pay was the same; he had the same opportunities to work overtime; he worked in the same general area—teardown—as he had before; his supervisors remained the same; and he even characterizes Gun and Ammo as a prestigious position at Raytheon, like ELX. (McDowell Dep. vol. I, 81:14, 82:2-6, 82:15-83:25, 86:20-24, 87:9-10, DN 49-4; McDowell Dep. vol. II, 119:16-120:20, DN 50-1; Frey Dep. 20:6-12, DN 49-7).

The record, however, contains other evidence indicating that McDowell's reassignment was a materially adverse change. In many ways, McDowell's new working conditions could be

seen as a demotion: he was moved out of a prestigious area where he had built a reputation as a competent worker with specialized expertise; he had to come to work an hour earlier to train his replacements; he had to spend time and energy covering for his replacements' mistakes; he was essentially performing supervisory work, which regularly called him away from his assigned tasks on the Gun and Ammo line; and he was not offered additional pay or a change in title to reflect these changes in his responsibilities. (Ware Dep. 28:11-19, 36:4-14; McDowell Dep. vol. I, 81:12-15, 81:21-82:1, 86:17-87:8, 125:3-18, DN 49-4; Frey Dep. 56:22-58:7, DN 50-3).

In sum, the evidence could be viewed to show that McDowell's transfer to the Gun and Ammo line resulted in him working as a de facto supervisor, putting in extra hours to train his replacements and cleaning up their mistakes, all while he himself worked in a different area. A reasonable jury could find that these conditions reflect a materially adverse change in McDowell's employment conditions. While not the typical markers of an adverse employment action—demotion, pay reduction, termination—the evidence reflects that the reassignment had a material effect on the circumstances of McDowell's employment. Accordingly, McDowell has presented sufficient evidence for a reasonable jury to conclude he suffered an adverse employment action.

Raytheon next argues that McDowell has failed to establish this fourth element of the prima facie case because he does not identify any younger comparators. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 17-18). The Sixth Circuit, however, does not require the identification of a comparator in age discrimination cases where the plaintiff was replaced by a younger worker. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004) ("The fourth element *may be* satisfied by showing that similarly situated non-protected employees were treated more favorably." (emphasis added) (internal quotation marks omitted)); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) ("One way that [the plaintiff] could satisfy the fourth element of her age

13

discrimination claim is by providing evidence that she was replaced by a younger worker." (citation omitted)). A plaintiff must only show "circumstances that support an inference of discrimination." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012)). Such circumstances include not only the more favorable treatment of similarly situated younger employees, but also the replacement of the plaintiff with a younger employee. *Id.* (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008)).

In this instance, McDowell alleges that he was replaced with younger employees when he was removed from the ELX line. (Pl.'s Resp. Def.'s Mot. Summ. J. 3, 19). McDowell testified that his replacements were younger than he was. (McDowell Dep. vol. I, 92:3-6, DN 49-4). Raytheon does not appear to dispute that McDowell's replacements were indeed younger. Instead, Raytheon points to its reasoning for moving McDowell to argue that there are no circumstances giving rise to an inference of discrimination. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 18). The Court will not consider this evidence at this stage of the *McDonnell Douglas* framework:

> [A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

*Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 333 (6th Cir. 2012) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003)). Because McDowell has offered testimony that he was replaced by younger workers and Raytheon has offered no evidence to rebut this testimony, a jury could reasonably find that McDowell has made out a prima facie case. Accordingly, the burden now shifts to Raytheon to offer a legitimate non-discriminatory reason for transferring McDowell.

### b. Non-Discriminatory Reason

Raytheon has articulated a legitimate nondiscriminatory reason for its reassignment of McDowell. Before McDowell's transfer, ELX was staffed by two OEMs and four Electronics Mechanics ("EMs"). (Frey Dep. 63:25-64:6, DN 49-7). McDowell and the other OEM worked the day shift, and the four EMs worked the night shift. (Frey Dep. 63:11-15, 64:1-2, DN 49-7). According to the collective bargaining agreement between Raytheon and the Union, EMs could work in a limited number of areas—including ELX—while OEMs could work in a broader set of areas. (Frey Dep. 64:2-4, DN 49-7; Ford Decl. ¶¶ 14-18, DN 49-9; Ford. Decl. Ex. E, 49-9). For a time, there was enough work in ELX for all six employees. (Frey Dep. 63:18-25, 72:16-21, DN 49-7). When work slowed, Raytheon chose to leave the four EMs on ELX and move McDowell and the other OEM because of the broader number of roles available to OEMs. (Frey Dep. 64:2-6, 72:22-73:4, DN 49-7). Thus, Raytheon has offered a legitimate nondiscriminatory reason for McDowell's reassignment. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." (internal citation omitted)).

### c. Pretext

Because Raytheon has offered a legitimate non-discriminatory reason for the actions taken against McDowell, the burden shifts back to McDowell to offer evidence showing that Raytheon's reasoning was pretextual—that the reasoning was "fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). The essential question at this stage is whether the employer took action for the stated reason. *Pelcha*, 988 F.3d at 326 (citing *Chen*, 580 F.3d at 400 n.4). If a plaintiff produces evidence from which a jury could reasonably

15

doubt the employer's explanation, then his claim should survive summary judgment. *Chen*, 580 F.3d at 400 n. 4 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

A plaintiff can prove pretext by demonstrating that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (internal quotation marks omitted) (citation omitted). McDowell argues that Raytheon's stated reason for reassigning him—changing staffing needs—was pretextual because it was one of three "evolving rationales." (Pl.'s Resp. Def.'s Mot. Summ. J. 16). Shifting justifications can be evidence of pretext that create a genuine dispute of material fact:

> Shifting justifications over time calls the credibility of those justifications into question. By showing that the defendants' justification for firing him changed over time, [the plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.

*Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540 (6th Cir. 2014) (quoting *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002)); *see Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996), *amended on other grounds*, 97 F.3d 833 (6th Cir. 1997); *Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006) (citing *Thurman*, 90 F.3d at 1167). Inconsistency in an employer's explanation of their reasoning for taking an adverse action "raises an inference [of pretext] that must be drawn, at summary judgment, in favor of the [plaintiff]." *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 122 (6th Cir. 2007) (first alteration in original) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 468 (6th Cir. 2003)).

In this instance, Raytheon has offered shifting explanations of its reassignment of McDowell. Raytheon suggests that the move was part of a cross-training initiative. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 3). Raytheon also indicates that McDowell was moved from ELX due to a lack of available work. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 5). Finally, Raytheon

16

states that McDowell was moved as part of a routine pattern of movement. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. 21). The latter two justifications are not necessarily in conflict with each other—the routine movement could have been in response to changed workloads—but they are both in conflict with the first justification. Movement for training purposes is distinct from movement in response to workload needs. One is proactive and aimed at improving Raytheon's workforce, while the other is reactive and aimed at improving Raytheon's bottom line. In its reply, Raytheon again advances each of these justifications. (Def.'s Reply Mot. Summ. J. 13-14). The evidentiary record is similarly unclear. Slides from an internal Raytheon presentation suggest that McDowell was moved as part of a cross-training initiative. (Ford Decl. Ex. D, DN 49-9). Emails between Frey, Justice, Ford, and Lenhart state that McDowell was moved to "balance workload [and] to maintain efficiencies." (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. K, at 3-4). Finally, Frey testified that McDowell was moved because the work in ELX had "dried up." (Frey Dep. 62:3-9, DN 49-4). Because Raytheon and its management have offered changing explanations why McDowell was moved, a reasonable jury could determine that the proffered reasons are pretext.

McDowell has successfully carried his evidentiary burden at all stages of the *McDonnell Douglas* framework. Thus, Raytheon's motion for summary judgment is denied and McDowell's age discrimination claim may continue using circumstantial evidence.

      B.     **<u>Retaliation</u>**

The KCRA prohibits retaliation against employees who oppose or report unlawful workplace discrimination. KRS 344.280(1). As with discrimination claims, KCRA retaliation claims are evaluated using the same standards that apply to federal retaliation claims. *Hamilton v. Gen. Elec. Corp.*, 556 F.3d 428, 435 (6th Cir. 2000).

When a plaintiff alleges retaliation based on indirect evidence, courts use the *McDonnell Douglas* burden shifting analysis. *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 532 (6th Cir. 2015). First, a plaintiff must make out a prima facie case of retaliation. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014). As this Court has explained:

> To demonstrate a prima facie case of retaliation under [the KCRA], a plaintiff must demonstrate that she (1) engaged in protected activity; (2) her engagement in that protected activity was known to the defendant; (3) the defendant took an adverse employment action against her; and (4) there is a causal link between her engagement in the protected activity and the adverse employment action.

*Pike v. Hardin Cnty. Water Dist. No. 2*, No. 3:23-CV-42-DJH-RSE, 2024 WL 1199439, at *3 (W.D. Ky. Mar. 20, 2024) (quoting *Banados v. Alto-Shaam, Inc.*, No. 5:22-125-DCR, 2022 WL 2252750, at *2 (E.D. Ky. June 22, 2022)). If the plaintiff makes out a prima facie case, then the burden shifts to his employer to produce a legitimate, nonretaliatory reason for its actions. *Montell*, 757 F.3d at 504. If the employer produces an explanation, then the burden shifts back to the employee to produce evidence "from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.* (citation omitted)

        1.    *Prima Facie Case*

Raytheon argues that McDowell's retaliation claim must fail because he did not face an adverse employment action following his complaint to Ford. (Def.'s Mem. Supp Def.'s Mot. Summ. J. 22-23). To establish an adverse employment action, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 639 (6th Cir. 2009)). "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N. & Santa Fe Ry.*

18

*Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Simply put, the retaliation must have injured or harmed the plaintiff to be actionable. *Taylor*, 703 F.3d at 328 (citing *White*, 548 U.S. at 67).

In this instance, McDowell has not presented evidence from which a reasonably jury could determine that he faced an adverse employment action as a result of his complaints to Ford and the EEOC. McDowell points to the increased supervision and scrutiny he faced from Justice following his complaint to Ford on the day of Justice's age-related comments. (Pl.'s Resp. Def.'s Mot. Summ. J. 19). The Sixth Circuit has held, however, that increased scrutiny is not an adverse employment action. *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 169 (6th Cir. 2004) ("The only other retaliatory conduct to which [the plaintiff] points with any specificity is increased scrutiny of her work, but such actions also are not tantamount to adverse employment actions." (citing *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999))). The same is true for Justice's increased scrutiny of McDowell's charitable activities. McDowell also points to Justice's request that McDowell talk to him "like a man" as a potential adverse employment action. While arguably confrontational, this did not have an actual effect on the conditions of McDowell's employment. Finally, McDowell points to the evaluation he received. Even assuming that the evaluation was in fact negative, this is not an adverse employment action. It did not affect McDowell's pay, eligibility for overtime, or working conditions. *See Tuttle*, 474 F.3d at 321-23 ("[A] negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary." (citation omitted)); *Perry v. AutoZoners, LLC*, 954 F. Supp. 2d 599, 613 (W.D. Ky. 2013) (citing *Tuttle*, 474 F.3d at 322; *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 789 (6th Cir. 2000)) (a negative evaluation does not constitute adverse employment action unless employee can point to tangible employment

19

action suffered because of the evaluation). Because McDowell cannot establish that he suffered an adverse employment action as a result of his reports, he cannot make out a prima facie case of retaliation and his claim fails. Accordingly, Raytheon is entitled to summary judgment on McDowell's retaliation claim.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 49) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's retaliation claim is **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Judge
United States District Court
December 10, 2025

cc:     counsel of record